Receipt number AUSFCC-11254455

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

### BID PROTEST

| | | | |
|---|---|---|---|
| **POSILLICO CIVIL, INC.** | ) | **CFC NO.:** | **26-707 C** |
| | ) | | |
| **Plaintiff,** | ) | **Judge:** | |
| | ) | | |
| **v.** | ) | | |
| | ) | | |
| **THE UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **Defendant.** | ) | | |
| _____ | ) | | |

### COMPLAINT (BID PROTEST)

### Pursuant to 28 U.S.C. § 1491(b)(1) and 41 U.S.C. § 4106(f)(1)(A)

Plaintiff Posillico Civil, Inc. ("Posillico" or "Plaintiff"), through its undersigned counsel, brings this action against the United States, acting through the U.S. Department of Homeland Security and U.S. Customs and Border Protection ("CBP" or "the Agency"), and states as follows.

### INTRODUCTION

1.      This is a bid protest brought pursuant to 28 U.S.C. § 1491(b)(1) and 41 U.S.C. § 4106(f)(1)(A), challenging task orders issued by CBP under its Border Infrastructure Design-Build Indefinite Delivery, Indefinite Quantity contract vehicle, Contract No. 70B01C26D00000010 (the "IDIQ"), on the ground that each challenged order increases the scope, period, or maximum value of the contract under which it was issued.

2.      Plaintiff is a qualified holder of the IDIQ. Plaintiff does not challenge the validity of the IDIQ itself, the Secretary of Homeland Security's authority to issue waivers pursuant to Section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 102(c), 110 Stat. 3009, 3009-555 (1996) (codified as

1

amended at 8 U.S.C. § 1103 Note), or the general scope of the waivers published in the Federal Register[1] (the "Section 102 Waiver").

3.  The challenged instruments in this action are the task orders awarded by CBP pursuant to seven solicitations on which Plaintiff submitted timely proposals: the El Paso Solicitation (No. 70B01C26R00005458), the Big Bend Solicitation (No. 70B01C26R00000020), the Laredo Solicitations (Nos. 70B01C26R00006846 and 70B01C26R00000016), the Rio Grande Solicitations (Nos. 70B01C26R00007153 and 70B01C26R00005818), and the Del Rio Solicitation (No. 70B01C26R00006118). The resulting ten task orders awarded under those seven solicitations are referred to collectively herein as the "Challenged Task Orders."

4.  In addition to the ten Challenged Task Orders, CBP has awarded fourteen additional task orders under the IDIQ to date (collectively, the "Pattern Orders"). The Pattern Orders are not themselves challenged in this Complaint, and Plaintiff seeks no declaratory or monetary relief specifically directed to them. The Pattern Orders are identified herein because their issuance under the same altered ordering regime informs, and is independently probative of, the scope-expansion analysis applicable to the Challenged Task Orders.

5.  As detailed below, each Challenged Task Order, as awarded, requires the contractor to perform substantive work materially different in kind from, and outside the scope of, the design-build border infrastructure services authorized by the IDIQ. Among other things, each Challenged Task Order assigns to the contractor: (a) lead-agency authority for coordination with and obtaining final concurrence from the U.S. International Boundary and Water Commission, a separate Department of State agency; (b) production of professional training programs, instructional modules, and training videos through retained training facilitators, training instructors, and professional videographers; and (c) other categories of work not authorized by, or incidental to, the IDIQ's Statement of Work.

---

[1] The waivers were published in the Federal Register at: 90 Fed. Reg. 48281 (Oct. 15, 2025) (Tucson Sector); 90 Fed. Reg. 48282 (Oct. 15, 2025) (El Centro Sector); 90 Fed. Reg. 48283 (Oct. 15, 2025) (Del Rio Sector); 90 Fed. Reg. 48284 (Oct. 15, 2025) (Rio Grande Valley Sector); 90 Fed. Reg. 48285 (Oct. 15, 2025) (Yuma Sector); 90 Fed. Reg. 48286 (Oct. 15, 2025) (Big Bend Sector); 90 Fed. Reg. 48287 (Oct. 15, 2025) (Laredo Sector); 90 Fed. Reg. 48288 (Oct. 15, 2025) (El Paso Sector); 90 Fed. Reg. 48289 (Oct. 15, 2025) (San Diego Sector).

6.      Plaintiff seeks declaratory relief and recovery of its bid preparation and proposal costs incurred in responding to the seven solicitations identified above. Plaintiff additionally seeks, in the alternative, damages for breach of the implied-in-fact contract that arose in connection with each of the seven solicitations on which Posillico bid to fairly consider Posillico's proposal.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1491(b)(1), which grants this Court jurisdiction over actions by an interested party objecting to a solicitation, the award of a contract, or an alleged violation of statute or regulation in connection with a procurement or proposed procurement.

8.      This action is brought pursuant to 41 U.S.C. § 4106(f)(1)(A), which authorizes a protest challenging a task order issued under a multiple-award indefinite-delivery, indefinite-quantity contract "on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued." Each count of this Complaint is grounded in that predicate: that each of the Challenged Task Orders, as awarded, exceeds the scope, period, or maximum value of the IDIQ.

9.      Plaintiff does not challenge the issuance of any individual task order on the basis of routine ordering decisions—such as the application of evaluation factors, the comparative assessment of proposals, or the selection of one offeror over another—that are committed to agency discretion under FAR 16.505(b) and over which the GAO has exclusive jurisdiction under 41 U.S.C. § 4106(f)(2). Plaintiff's claims arise exclusively under § 4106(f)(1)(A).

10.     Plaintiff seeks declaratory relief and bid preparation and proposal costs. Plaintiff does not seek injunctive relief and does not seek any relief that would interfere with the expeditious construction of border infrastructure or roads. The relief sought is therefore consistent with the scope of the Section 102 Waiver, and the Section 102 Waiver does not bar this action.

11.     This Court reviews CBP's procurement conduct under 28 U.S.C. § 1491(b)(4), which independently establishes the applicable standard of review as a matter of Tucker Act jurisdiction. The standard of review under § 1491(b)(4) does not derive from the Administrative

Procedure Act (the "APA"), 5 U.S.C. § 551 *et seq.*, and is therefore not displaced by any purported waiver of the APA. Section 1491(b)(4) is a jurisdictional grant from Congress to the federal courts; the Section 102(c) waiver authority—which extends to laws governing the construction of barriers and roads—does not extend to jurisdictional statutes governing the authority of the federal courts.

12.    In the alternative, this Court has jurisdiction over Count V pursuant to 28 U.S.C. § 1491(b)(1), which grants this Court jurisdiction over claims founded upon any express or implied contract with the United States, including the implied-in-fact contracts that arise in connection with each procurement to fairly consider the offerors' proposals. Count V is pleaded in the alternative pursuant to RCFC 8(d)(2) as a contract claim distinct from the bid protest claims pleaded in Counts I through IV.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1491(b)(1).

### PARTIES

14.    Plaintiff Posillico Civil, Inc. is a New York corporation with its principal place of business at 1750 New Highway, Farmingdale, New York 11735. Posillico is a heavy civil construction contractor providing integrated civil engineering and construction services to commercial and federal government clients.

15.    Posillico holds Indefinite Delivery, Indefinite Quantity Contract No. 70B01C26D00000010, awarded by CBP on October 31, 2025. Posillico is one of eleven prequalified IDIQ holders eligible to compete for task orders under the IDIQ.

16.    Posillico is an interested party with standing to bring this protest. As a prequalified holder of the IDIQ eligible to compete for each Challenged Task Order, and as an actual offeror that submitted timely proposals on each of the seven solicitations identified herein, Posillico has a direct economic interest in the lawful issuance of task orders under the IDIQ.

17.    But for CBP's issuance of the Challenged Task Orders containing substantive work outside the IDIQ's scope, Posillico had a substantial chance of receiving one or more of the Challenged Task Order awards. Independently, Posillico was injured by its expenditure of bid preparation and proposal costs in responding to seven solicitations that, by reason of CBP's

conduct alleged herein, did not afford a genuine competitive opportunity for award within the IDIQ's lawful framework.

18. Defendant is the United States of America, acting through the U.S. Department of Homeland Security and its component agency, U.S. Customs and Border Protection. CBP issued the IDIQ, issued the solicitations identified herein, and awarded the Challenged Task Orders.

## STATUTORY AND REGULATORY FRAMEWORK

### Tucker Act Jurisdiction and Task Order Protest Rights

19. This Court has bid protest jurisdiction pursuant to 28 U.S.C. § 1491(b)(1).

20. For task orders issued under civilian multiple-award IDIQ contracts, 41 U.S.C. § 4106(f)(1)(A) provides protest jurisdiction where the protest is brought on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued.

21. All counts of this Complaint are grounded in 41 U.S.C. § 4106(f)(1)(A): that each Challenged Task Order, as awarded, exceeds the scope, period, or maximum value of the IDIQ.

### IDIQ Contract Structure and Order Limitations

22. FAR 16.504(a)(1) requires that an indefinite-delivery, indefinite-quantity contract include a stated minimum quantity that the Government must order. The IDIQ vehicle CBP elected to use was constituted as an indefinite-delivery, indefinite-quantity contract.

23. FAR 16.504(c)(1)(ii) describes the framework for multiple-award IDIQ contracts. CBP constituted the IDIQ here as a multiple-award contract vehicle awarded to eleven prequalified contractors.

24. FAR 16.505(a)(2) requires that individual orders under an IDIQ clearly describe all services to be performed or supplies to be delivered so that the full cost or price for performance can be established when the order is placed, and that such orders remain within the scope of the underlying contract. Task orders issued under the IDIQ are bound by the scope and terms of the IDIQ as constituted.

5

**Section 102 of the IIRIRA**

25.     Section 102(a) of IIRIRA authorizes the Secretary of Homeland Security to take such actions as may be necessary to install additional physical barriers and roads in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry. 8 U.S.C. § 1103 note.

26.     Section 102(c) authorizes the Secretary to waive legal requirements determined to be necessary to ensure the expeditious construction of barriers and roads. *Id.*

27.     Whatever the scope of the Section 102(c) waiver authority, CBP remained bound to issue task orders consistent with the scope of the IDIQ vehicle it elected to use.

## FACTUAL BACKGROUND

**The IDIQ Vehicle**

28.     CBP awarded the Border Infrastructure Design-Build IDIQ on or around October 31, 2025, to eleven qualified contractors, including Posillico.[2]

29.     The IDIQ was issued with a stated aggregate ceiling of $37,000,000,000 and a five-year ordering period. Exh. 1 (Posillico IDIQ) at 5, § B.2.

30.     The IDIQ Statement of Work seeks the "design, construction, installation, and improvement of border infrastructure and technology along the southern border, including new or replacement primary, waterborne, and secondary barriers; roads; gates; bridges; barrier system attributes (e.g., cameras, lights, sensors, and other detection technology); and additional services necessary to undertake, complete, or maintain the border infrastructure and barrier system." Exh. 2 (Attachment No. 1, IDIQ SOW) at 1.

31.     Section B.2 of the IDIQ states that "there is no minimum guarantee per IDIQ award." Exh. 1 at 5, § B.2.

---

[2] The eleven IDIQ awardees are: SLS Federal Services LLC (70B01C26D00000003); Granite Construction Co. (70B01C26D00000004); BCCG, A Joint Venture (70B01C26D00000005); Barnard Construction Company, Inc. (70B01C26D00000006); Southwest Valley Constructors Co. (70B01C26D00000007); Cochrane USA Inc. (70B01C26D00000008); Sundt Construction, Inc. (70B01C26D00000009); Posillico Civil, Inc. (70B01C26D00000010); Coastal Environmental Group, Inc. (70B01C26D00000011); Fisher Sand & Gravel Co. (70B01C26D00000012); and Spencer Construction LLC (70B01C26D00000013). *See* https://www.usaspending.gov/search?hash=c5afe9addd5259d849f165c96dbfda02.

**The Seven Challenged Task Orders**

32.    Each of the Challenged Task Orders, as awarded, requires the contractor to perform substantive categories of work that are not authorized by the IDIQ's Statement of Work and are not reasonably incidental to the design-build border infrastructure services the IDIQ authorizes. Those categories of work are described below as to each Challenged Task Order.

**The El Paso Task Order**

33.    CBP awarded Task Order No. 70B01C26F00000073 (the "El Paso Task Order") on January 6, 2026, in response to the El Paso Solicitation (No. 70B01C26R00005458). The El Paso Task Order is a firm-fixed-price order with a total value of $1,907,700,000.00 and was awarded to Fisher Sand & Gravel Co. Exh. 3 (EPT-4 Award Fisher).

34.    The El Paso Task Order directs the contractor to perform work within the El Paso, Texas Sector, including Lordsburg, New Mexico Stations, "to complete the design and construction of new vertical barrier and power distribution, lighting, cameras, equipment shelters and linear ground detection system." Exh. 4 (Attachment No. 2 SOW EPT-4 5458 A01 v3) at 1, § 2.

35.    The El Paso Task Order additionally assigns to the contractor categories of work outside the IDIQ's scope, including:

    a.    USIBWC lead-agency coordination and final concurrence. The contractor is required to "coordinate with and receive final concurrence" from the U.S. International Boundary and Water Commission ("USIBWC") that all base and optional design requirements satisfy USIBWC "requirements for construction along the United States land border with Mexico." Exh. 5 (SOW Attachment C Project Specs EPT 5458 A02 v1) at 11, § 1.2.A.3.r. The USIBWC is a Department of State agency responsible for applying the boundary and water treaties between the United States and Mexico. The El Paso Task Order project specifications do not specify any role for CBP in obtaining USIBWC concurrence; the responsibility falls on the contractor. The IDIQ Statement of Work neither identifies USIBWC coordination nor authorizes the assignment of lead-agency responsibility for inter-agency coordination to the contractor.

7

b. Professional training program and training video production. Section 01 79 00 of the El Paso Task Order project specifications requires the contractor to prepare and provide an instructional program and training modules for government personnel on the use of automated gates, cameras, systems, equipment, and products, including the retention of a training facilitator, training instructor, and a professional videographer to prepare training videos and guides instructing government personnel on the operation, maintenance, troubleshooting, and repair of equipment systems. Exh. 5 at 110-11, §§ 1.2, 1.6. The IDIQ Statement of Work neither identifies professional training program development nor authorizes the production of professional training videos by the contractor.

**The Big Bend Task Order**

36.    CBP awarded Task Order No. 70B01C26F00000201 (the "Big Bend Task Order") on March 5, 2026, in response to the Big Bend Solicitation (No. 70B01C26R00000020). The Big Bend Task Order is a firm-fixed-price order with a total value of $960,423,540.00 and was awarded to Barnard Construction Co., Inc. Exh. 6 (BBT-3 Award Barnard).

37.    The Big Bend Task Order directs the contractor to perform work within the Big Bend, Texas Sector, encompassing Hudspeth, Jeff Davis, and Presidio Counties, Texas, to design and construct a vertical barrier (Fast Track segment and segments 1 and 2 with associated paint, roads, gates, bridges, and drainage and erosion control), provide a Linear Ground Detection System with shelters, power, infrared illuminators, and cameras, and repair access roads. Exh. 7 (SOW Attachment C Project Specs Big Bend) at 3-4; Exh. 8 (Attachment No. 1 Price Schedule Big Bend) at 1.

38.    The Big Bend Task Order additionally assigns to the contractor categories of work outside the IDIQ's scope, including:

a. USIBWC lead-agency coordination and final concurrence. The contractor is required to obtain final USIBWC concurrence that all base construction designs meet USIBWC requirements for construction along the Rio Grande, and the project specifications expressly provide that the contractor "shall be the lead for all US-IBWC coordination" other than CBP's initial introduction. Exh. 7 at 13, § 1.2.A.3.v. The IDIQ Statement of Work neither identifies USIBWC coordination

8

nor authorizes the assignment of lead-agency responsibility for inter-agency coordination to the contractor.

b. Direction of utility company operations and negotiation of utility compensation. The Big Bend Task Order project specifications place responsibility on the contractor "to coordinate with the utility company to have the utility company raise the overhead power lines" to accommodate the vertical barriers. Exh. 7 at 7, § 1.2.A.3.g. The Q&A specifications further state that the contractor "is responsible for all utilities coordination" and that any compensation required by the utility company "shall be brought by the Contractor to the attention of the COR immediately." Exh. 9 (BBT-3 Q&A A0003) at 3, Q.17; Exh. 7 at 7, § 1.2.A.3.g. The IDIQ Statement of Work does not authorize the contractor to direct private utilities to modify their existing infrastructure or to negotiate compensation owed to private utilities for such modifications.

c. Professional training program and training video production. Section 01 79 00 of the Big Bend Task Order project specifications requires the contractor to retain a training facilitator, training instructor, and professional videographer to prepare training videos and guides for government personnel. Exh. 7 at 111-12, §§ 1.2, 1.6. The IDIQ Statement of Work neither identifies professional training program development nor authorizes the production of professional training videos by the contractor.

d. Cattle fencing and cattle guards. The Big Bend Task Order requires the contractor to provide 60 miles of cattle fencing and 30 cattle guards. Exh. 8 at 2 (CLINs 0023-0026). The IDIQ Statement of Work, which identifies barriers, roads, gates, bridges, and barrier system attributes such as cameras, lights, and sensors, does not identify livestock control infrastructure as within the design-build scope it authorizes.

**The Laredo 3 Task Orders**

39.     CBP awarded Task Order Nos. 70B01C26F00000138 and 70B01C26F00000148 (collectively, the "Laredo 3 Task Orders") on March 5, 2026, in response to the Laredo Solicitation (No. 70B01C26R00000016). Task Order No. 70B01C26F00000138 is a firm-fixed-

9

price order valued at $523,929,041.00 and was awarded to Southwest Valley Constructors Co. Task Order No. 70B01C26F00000148 is a firm-fixed-price order valued at $269,200,000.00 and was awarded to Spencer Construction LLC. Exh. 10 (LRT-3 Award SW Valley); Exh. 11 (LRT-3 Award Spencer).

40.     The Laredo 3 Task Orders direct the contractors to design and construct waterborne barriers, waterborne barrier patrol roads, vertical barriers (Fast Track segment and segment 1), and a Linear Ground Detection System with associated power, infrared illuminators, gate motors, and cameras for the waterborne patrol road. Exh. 12 (Attachment No. 1a Price Schedule LRT-3) at 1.

41.     The Laredo 3 Task Orders additionally assign to the contractors categories of work outside the IDIQ's scope, including:

   a.  Cattle fencing and cattle guards. The Laredo 3 Task Orders require the contractor to "price out 40 miles of Cattle Fencing materials and construction and 40 Cattle Guards materials and construction." Exh. 12 at 2 (CLINs 0026-0029). The IDIQ Statement of Work does not identify livestock control infrastructure as within the design-build scope it authorizes.

**The Laredo 4 Task Order**

42.     CBP awarded Task Order No. 70B01C26F00000165 (the "Laredo 4 Task Order") on March 9, 2026, in response to the Laredo Solicitation (No. 70B01C26R00006846). The Laredo 4 Task Order is a firm-fixed-price order with a total value of $512,334,000.00 and was awarded to Granite Construction Co. Exh. 13 (LRT-4 Award Granite).

43.     The Laredo 4 Task Order directs the contractor to perform work within the Laredo, Texas Sector, including Webb and Zapata Counties, Texas, encompassing the design and construction of new vertical barrier and waterborne barrier patrol road attributes, including power distribution, lighting, cameras, equipment shelters, and a linear ground detection system. Exh. 14 (Attachment No. 2 SOW LRT-4) at 1, § 2.

44.     The Laredo 4 Task Order additionally assigns to the contractor categories of work outside the IDIQ's scope, including:

a. USIBWC lead-agency coordination and final concurrence. The contractor is required to receive final USIBWC concurrence for all designs for construction along the Rio Grande, and the project specifications provide that, other than CBP's initial introduction, all coordination, communication, and efforts with USIBWC are to be led by the contractor. Exh. 15 (SOW Attachment C Project Specs LRT-4) at 15, § 1.2.A.3.v.

b. Professional training program and training video production. The contractor is required to retain a training facilitator, training instructor, and professional videographer to prepare training videos and guides for government personnel. Exh. 15 at 113-14, §§ 1.2, 1.6.

c. Cattle fencing and cattle guards. The contractor is required to construct 30 miles of cattle fencing and provide 30 cattle guards. Exh. 16 (Attachment No. 1 Price Schedule LRT-4) at 2 (CLINs 0032-0035).

**The Rio Grande 1 Task Orders**

45. CBP awarded Task Order Nos. 70B01C26F00000117 and 70B01C26F00000118 (collectively, the "Rio Grande 1 Task Orders") on January 27, 2026, in response to the Rio Grande Solicitation (No. 70B01C26R00005818). Task Order No. 70B01C26F00000117 is a firm-fixed-price order valued at $382,728,649.90 and was awarded to Barnard Construction Co., Inc. Task Order No. 70B01C26F00000118 is a firm-fixed-price order valued at $259,646,000.00 and was awarded to Spencer Construction LLC. Exh. 17 (RGV-1 Award Barnard); Exh. 18 (RGV-1 Award Spencer).

46. The Rio Grande 1 Task Orders direct the contractors to design and construct waterborne barriers (with associated boat ramps, river clearing, anchors, gates, and roads), waterborne barrier patrol roads, vertical barriers, access road repair, and a Linear Ground Detection System with associated power, infrared illuminators, lighting, cameras, shelters, and gate motors. Exh. 19 (SOW RGV-1) at 1, §§ 2, 4.1; Exh. 20 (Price Schedule RGV-1).

47. The Rio Grande 1 Task Orders additionally assign to the contractors categories of work outside the IDIQ's scope, including:

11

a. USIBWC lead-agency coordination and final concurrence. The contractors are designated as lead for all USIBWC coordination and required to obtain final USIBWC concurrence that all base and option designs meet IBWC requirements for construction along the Rio Grande. Exh. 21 (SOW Attachment C Project Specs RGV-1) at 13, § 1.2.A.3.v.

b. Professional training program and training video production. Section 01 79 00 of the project specifications requires the contractors to retain a training facilitator, training instructor, and professional videographer to prepare training videos and guides for government personnel. Exh. 21 at 113-14, §§ 1.2, 1.6.

c. Cattle fencing and cattle guards. The contractors are required to provide 15 miles of cattle fencing and 15 cattle guards. Exh. 20 at 2 (CLINs 0029-0032).

**The Rio Grande 4 Task Order**

48. CBP awarded Task Order No. 70B01C26F00000207 (the "Rio Grande 4 Task Order") on March 5, 2026, in response to the Rio Grande Solicitation (No. 70B01C26R00007153). The Rio Grande 4 Task Order is a firm-fixed-price order with a total value of $512,079,200.00 and was awarded to Spencer Construction LLC. Exh. 22 (RGV-4 Award Spencer).

49. The Rio Grande 4 Task Order directs the contractor to design and construct vertical barriers and attributes within identified Rio Grande Valley segments in Starr and Hidalgo Counties, Texas. Exh. 23 (SOW RGV-4) at 1, § 2.

50. The Rio Grande 4 Task Order additionally assigns to the contractor categories of work outside the IDIQ's scope, including:

a. USIBWC lead-agency coordination and final concurrence. The contractor is required to obtain final USIBWC concurrence that all designs meet IBWC requirements for construction along the Rio Grande and is designated as lead for all USIBWC coordination other than CBP's initial introduction. Exh. 24 (SOW Attachment C Project Specs RGV-4) at 18-19, § 1.2.A.3.jj.

b. Professional training program and training video production. The contractor is required to retain a training facilitator, training instructor, and professional

12

videographer to prepare training videos and guides for government personnel. Exh. 24 at 117-18, §§ 1.2, 1.6.

c. Cattle fencing and cattle guards. The contractor is required to construct 40 miles of cattle fencing and provide 30 cattle guards. Exh. 23 at 4, § 4.1(23); Exh. 25 (Price Schedule RGV-4) at 4 (CLINs 0074-0077).

**The Del Rio 4 Task Orders**

51.     CBP awarded Task Order Nos. 70B01C26F00000140 and 70B01C26F00000141 (collectively, the "Del Rio 4 Task Orders") on March 5, 2026, in response to the Del Rio Solicitation (No. 70B01C26R00006118). Task Order No. 70B01C26F00000140 is a firm-fixed-price order valued at $173,064,900.00 and was awarded to Spencer Construction LLC. Task Order No. 70B01C26F00000141 is a firm-fixed-price order valued at $645,853,488.00 and was awarded to Barnard Construction Co. Exh. 26 (DRT-4 Award Spencer); Exh. 27 (DRT-4 Award Barnard).

52.     The Del Rio 4 Task Orders direct the contractors to design and construct waterborne barriers, vertical barriers, and attributes within the Del Rio, Texas Sector. Exh. 28 (Attachment No. 2 SOW Del Rio 4) at 1, § 2.

53.     The Del Rio 4 Task Orders additionally assigned to the contractors categories of work outside the IDIQ's scope, including:

a. USIBWC and Railroad lead-agency coordination and final concurrence. The contractors are required to obtain final IBWC concurrence that the design meets IBWC requirements for construction along the Rio Grande and are designated as lead for all USIBWC and Railroad coordination other than CBP's initial introduction. Exh. 29 (SOW Attachment C Project Specs Del Rio 4) at 15, § 1.2.A.3.v.

b. Professional training program and training video production. The contractors are required to retain a training facilitator, training instructor, and professional videographer to prepare training videos and guides for government personnel. Exh. 29 at 113-14, §§ 1.2, 1.6.

    c.  Cattle fencing and cattle guards. The contractors are required to construct nearly 40 miles of cattle fencing and furnish 80 cattle guards. Exh. 28 at 2, § 4; Exh. 30 (Price Schedule Del Rio 4 All Components) at 4 (CLINs 0097-0100); Exh. 31 (Price Schedule Del Rio 4 VB and Attributes) at 4 (CLINs 0097-0100).

**The Pattern Orders**

54.    In addition to the ten Challenged Task Orders, CBP has awarded fourteen additional task orders under the IDIQ to date, collectively, the Pattern Orders. The table below identifies the twenty-four task orders awarded by CBP under the IDIQ, comprising the ten Challenged Task Orders and the fourteen Pattern Orders, as publicly identified through USASpending.gov and SAM.gov. The Challenged Task Orders are the operative subject of this Complaint; the Pattern Orders are identified to inform the scope analysis applicable to the Challenged Task Orders, and Plaintiff seeks no individualized relief as to the Pattern Orders.[3]

| Awardee | Solicitation | Task Order | Order Value |
|---|---|---|---|
| Challenged Task Orders (10 task orders awarded pursuant to 7 solicitations on which Posillico bid) | | | |
| Fisher Sand & Gravel Co. | 70B01C26R00005458 | 70B01C26F00000073 | $1,907,700,000.00 |
| Barnard Construction Co. | 70B01C26R00005818 | 70B01C26F00000117 | $382,728,649.90 |
| Spencer Construction LLC | 70B01C26R00005818 | 70B01C26F00000118 | $259,646,000.00 |
| Barnard Construction Co. | 70B01C26R00000020 | 70B01C26F00000201 | $960,423,540.00 |
| Southwest Valley Constructors | 70B01C26R00000016 | 70B01C26F00000138 | $523,929,041.00 |
| Spencer Construction LLC | 70B01C26R00000016 | 70B01C26F00000148 | $269,200,000.00 |
| Granite Construction Co. | 70B01C26R00006846 | 70B01C26F00000165 | $512,334,000.00 |

---

[3] Information and belief is required because the post-award notice and debriefing requirements at FAR 16.505(b)(6) have been waived pursuant to the Section 102 Waiver, and CBP has not consistently identified the task order solicitation associated with awarded orders publicized on USASpending.gov or SAM.gov.

| Awardee | Solicitation | Task Order | Order Value |
|---|---|---|---|
| Spencer Construction LLC | 70B01C26R00007153 | 70B01C26F00000207 | $512,079,200.00 |
| Spencer Construction LLC | 70B01C26R00006118 | 70B01C26F00000140 | $173,064,900.00 |
| Barnard Construction Co. | 70B01C26R00006118 | 70B01C26F00000141 | $645,853,488.00 |
| *Pattern Orders (14 additional task orders awarded under the IDIQ)* | | | |
| SLS Federal Services LLC | — | 70B01C26F00000003 | $382,324,930.00 |
| SLS Federal Services LLC | — | 70B01C26F00000029 | $683,548,800.00 |
| Barnard Construction Co. | — | 70B01C26F00000152 | $1,098,524,722.00 |
| Barnard Construction Co. | — | 70B01C26F00000292 | $1,585,324,926.00 |
| Cochrane USA Inc. | — | 70B01C26F00000188 | $641,277,600.00 |
| Fisher Sand & Gravel Co. | — | 70B01C26F00000018 | $440,440,440.00[4] |
| Fisher Sand & Gravel Co. | — | 70B01C26F00000028 | $316,700,000.00 |
| Fisher Sand & Gravel Co. | — | 70B01C26F00000017 | $1,550,800,000.00 |
| Fisher Sand & Gravel Co. | — | 70B01C26F00000044 | $1,862,854,000.00 |
| Fisher Sand & Gravel Co. | — | 70B01C26F00000067 | $458,090,440.00 |
| Fisher Sand & Gravel Co. | — | 70B01C26F00000169 | $1,371,800,000.00 |
| Fisher Sand & Gravel Co. | — | 70B01C26F00000311 | $847,040,000.00 |
| Fisher Sand & Gravel Co. | 70B01C26R00000068 | 70B01C26F00000319 | $345,040,000.00 |

---

[4] Based on publicly available information, Task Order 70B01C26F00000018 was awarded to Fisher Sand & Gravel Co. with a total value of $440,440,440.00, on December 16, 2025, then wholly terminated for the convenience of the government two days after award. *See* https://www.usaspending.gov/award/CONT_AWD_70B01C26F00000018_7014_70B01C26D00000012_7014 . Its inclusion is relevant to informing the scope analysis applicable to the Challenged Task Orders.

| Awardee | Solicitation | Task Order | Order Value |
|---|---|---|---|
| Spencer Construction LLC | — | 70B01C26F00000261 | $1,145,001,057.42 |

**The IDIQ's Bargained-For Character as a Multiple-Award Vehicle**

55.     The IDIQ was awarded by CBP on October 31, 2025, to eleven prequalified contractors, including Posillico, as a multiple-award contract vehicle. By its nature and as expressly constituted, a multiple-award IDIQ contemplates that orders for the work covered by the contract will be issued among the qualified holder pool. The bargained-for character of the IDIQ accordingly contemplated that each of the eleven prequalified holders would have a meaningful opportunity to compete for and receive task orders awarded under the contract.

56.     Multiple-award IDIQs are constituted, both as a regulatory matter under FAR 16.504(c)(1)(ii) and as a contractual matter between the awarding agency and the qualified holders, to support distributed competitive ordering across the holder pool. Concentration of award value within a small subset of holders, without documented basis, is incompatible with the structural premise of a multiple-award vehicle. CBP elected to constitute the IDIQ as a multiple-award contract vehicle, and CBP remained bound to administer the contract consistent with the structural premises of that election.

**CBP's Concentration of Awards Within Two Contractors**

57.     CBP has not administered the IDIQ in a manner consistent with its bargained-for character as a multiple-award vehicle. As reflected in the table above, CBP has concentrated the issuance of task orders under the IDIQ within a small subset of the qualified holder pool. Of the twenty-four task orders awarded to date, fourteen — representing approximately seventy-three percent (73%) of the cumulative award value — have been awarded to just two contractors: Fisher Sand & Gravel Co. and Barnard Construction Co., Inc.

58.     Fisher Sand & Gravel Co. has received nine task orders under the IDIQ, totaling approximately $9.1 billion. Barnard Construction Co., Inc. has received five task orders under the IDIQ, totaling approximately $4.7 billion. Together, these two contractors have received

approximately $13.8 billion of the approximately $18.9 billion in cumulative task order awards issued under the IDIQ to date.

59.    By contrast, several other prequalified IDIQ holders — including Posillico — have received no task orders, while the remaining holders have received between one and five task orders each at cumulative values substantially below those received by Fisher Sand & Gravel Co. and Barnard Construction Co., Inc.

60.    Upon information and belief, CBP has not produced and does not maintain documentation establishing an ordering methodology, an allocation framework, or a price-reasonableness analysis governing the issuance of task orders under the IDIQ. CBP has offered no documented rationale for the concentration of award value in Fisher Sand & Gravel Co. and Barnard Construction Co., Inc., and no documented basis for the disparate distribution of awards across the qualified holder pool.

61.    The absence of any documented allocation methodology or price-reasonableness analysis, considered together with the magnitude of the concentration relative to the eleven-holder pool, is incompatible with administration of the IDIQ as a multiple-award vehicle within its bargained-for structural premises. CBP's administration of the IDIQ has effectively converted the contract from a multiple-award vehicle, awarded to eleven prequalified holders, into an arrangement under which two contractors receive nearly three-quarters of awarded value and four qualified holders, including Posillico, receive nothing.

62.    At the time CBP issued each of the seven solicitations on which Posillico bid, CBP had already awarded multiple Pattern Orders to Fisher Sand & Gravel Co. and Barnard Construction Co., Inc. CBP knew or should have known when it issued the seven solicitations that, under its established ordering pattern and given the work to be specified by the resulting task orders, the resulting orders would assign substantive work outside the IDIQ's scope of the kind described above and would issue under an ordering regime far different from the IDIQ's bargained-for character. CBP nonetheless solicited proposals from Posillico and other eligible IDIQ holders, requiring those holders to incur substantial bid preparation and proposal costs to respond to procurements that were not genuine competitive opportunities for award within the IDIQ's lawful framework.

17

**Posillico's Proposals and Competitive Harm**

63.     Posillico timely submitted proposals on each of the seven solicitations identified in this Complaint. As a prequalified IDIQ holder, Posillico was technically qualified to perform each of the requirements solicited. Posillico was not selected for award on any of the seven solicitations.

64.     But for CBP's issuance of the Challenged Task Orders containing substantive work outside the IDIQ's scope, Posillico had a substantial chance of receiving one or more of the Challenged Task Order awards. Independently, Posillico was injured by the expenditure of bid preparation and proposal costs in responding to the seven solicitations identified herein, which—by reason of CBP's issuance of solicitations seeking work outside the IDIQ's lawful scope—were not genuine competitive opportunities for award within the IDIQ's framework.

65.     The Agency's decision to proceed under the Challenged Task Orders and to continue advancing performance thereunder, despite acknowledging that certain real estate, alignment, and third-party coordination issues remain unresolved[5], causes ongoing competitive harm to Posillico and progressively diminishes the availability of meaningful judicial relief.

## COUNT I
### Substantive Scope Expansion
### (41 U.S.C. § 4106(f)(1)(A); FAR 16.505(a)(2))

66.     Plaintiff incorporates the foregoing allegations.

67.     This Court has jurisdiction under 41 U.S.C. § 4106(f)(1)(A) to hear protests on the ground that a task order increases the scope of the contract under which it was issued.

68.     FAR 16.505(a)(2) requires that task orders issued under an IDIQ remain within the scope of the underlying contract. The scope inquiry under § 4106(f)(1)(A) turns on whether the order, as awarded, requires work materially different from, or materially broader than, what is authorized by the contract.

---

[5] *See, e.g.*, Exh. 32 (LRT-3 Q&A) at 1, Q.1 (final urban and rural delineations not available; contractors must coordinate with USIBWC for concurrence), Q.2 (contractors "responsible for obtaining IBWC approval of the final floodplain model"); Exh. 33 (LRT-4 Q&R) at 1, Q.2 (contractors must make assumptions on rural and urban boundaries), Q.3 (contractors "responsible for the coordination and cost for all work related to the protection and relocation of existing utilities other than differing site conditions"); Exh. 34 (Del Rio 4 Q&R) at 2, Q.7 (real estate for bridges and roads not cleared).

69.     The IDIQ Statement of Work authorizes design-build construction of border infrastructure—including barriers, roads, gates, bridges, lighting, cameras, sensors, and barrier system attributes—and work necessary to undertake, complete, or maintain the border infrastructure and barrier system. Exh. 2 at 1.

70.     Each of the Challenged Task Orders, as awarded, requires the contractor to perform substantive categories of work that are materially different in kind from the design-build border infrastructure services the IDIQ authorizes, including:

a.   Lead-agency authority for coordination with and final concurrence from the U.S. International Boundary and Water Commission, a separate Department of State agency. The IDIQ does not authorize, contemplate, or treat as incidental the assignment of inter-agency lead-coordination and approval functions to the contractor.

b.   Production of professional training programs, training modules, and instructional videos through retained training facilitators, training instructors, and professional videographers. The IDIQ does not authorize, contemplate, or treat as incidental the production of professional training and instructional media by the contractor.

c.   Direction of private utility company operations and negotiation of utility compensation (Big Bend Task Order). The IDIQ does not authorize, contemplate, or treat as incidental the assignment to the contractor of authority to direct private utilities to modify their existing infrastructure or to negotiate compensation owed to those utilities.

d.   Cattle fencing and cattle guards. The IDIQ Statement of Work does not identify livestock control infrastructure within the categories of design-build work it authorizes.

71.     The categories of work identified in the preceding paragraph are not minor implementation details of the design-build border infrastructure work the IDIQ authorizes. They are categories of substantive responsibility different in kind from those authorized: inter-agency lead-coordination authority is governmental, not construction; professional training and media production is a distinct service offering, not construction; direction of private utility operations

and negotiation of compensation owed to private parties is a procurement and contract function, not construction; and livestock control infrastructure is not described in the IDIQ's SOW. Each of these categories therefore lies outside the scope of the IDIQ.

72.     By issuing task orders that, as awarded, require the contractor to perform substantive categories of work materially outside the IDIQ's scope, CBP increased the scope of the contract within the meaning of 41 U.S.C. § 4106(f)(1)(A) and acted arbitrarily, capriciously, and contrary to law within the meaning of 5 U.S.C. § 706(2)(A) as incorporated by 28 U.S.C. § 1491(b)(4).

## COUNT II
### Structural Scope Expansion — Departure from the IDIQ's Bargained-For Character
### (41 U.S.C. § 4106(f)(1)(A))

73.     Plaintiff incorporates the foregoing allegations.

74.     Plaintiff alleges only that the Challenged Task Orders, as awarded under the altered ordering regime described herein, exceed the scope of the IDIQ within the meaning of 41 U.S.C. § 4106(f)(1)(A).

75.     This Court has jurisdiction under 41 U.S.C. § 4106(f)(1)(A) to hear protests on the grounds that a task order increases the scope of the contract under which it was issued.

76.     The scope of a task order issued under an IDIQ is informed by the contractual instrument under which it is issued, including both the categories of work described in the IDIQ's Statement of Work and the structural framework of the contract vehicle as constituted between the parties.

77.     IDIQ Contract No. 70B01C26D00000010 was constituted as a multiple-award contract vehicle awarded to eleven prequalified holders. The bargained-for character of the IDIQ contemplated distributed competitive ordering across the holder pool, with each prequalified holder having a meaningful opportunity to compete for and receive task orders under the contract.

78.     Of the twenty-four task orders awarded under the IDIQ to date, fourteen have been awarded to two of the eleven prequalified holders, representing approximately seventy-three percent of cumulative award value. Four of the eleven prequalified holders, including

Posillico, have received no task orders. Each Challenged Task Order was issued under this ordering pattern.

79.     Each of the Challenged Task Orders was issued under the altered ordering regime resulting from CBP's departure from the IDIQ's bargained-for character. Task orders issued under that altered regime are not authorized by the IDIQ as constituted between the parties. They are issued under an operationally converted vehicle in which two (2) contractors receive nearly three-quarters of the awarded value while the remaining prequalified holders receive substantially less, with several—Posillico included—receiving nothing at all. That is not the contract the parties entered into. The Challenged Task Orders therefore exceed the scope of the IDIQ within the meaning of 41 U.S.C. § 4106(f)(1)(A).

80.     This Count does not seek the application of fair-opportunity procedures, any procedural protection suspended by the Section 102 Waiver, or any relief within the GAO's exclusive jurisdiction under 41 U.S.C. § 4106(f)(2). Plaintiff does not challenge the IDIQ as solicited.

81.     CBP's issuance of the Challenged Task Orders under the altered ordering regime constitutes arbitrary and capricious action contrary to law within the meaning of 5 U.S.C. § 706(2)(A) as incorporated by 28 U.S.C. § 1491(b)(4).

## COUNT III
### Scope Expansion by Aggregation and Compression of the Bargained-For Ordering Framework (41 U.S.C. § 4106(f)(1)(A); FAR 16.504(a); FAR 16.505(a)(2))

82.     Plaintiff incorporates the foregoing allegations.

83.     This Count is brought under 41 U.S.C. § 4106(f)(1)(A) on the ground that each Challenged Task Order, as awarded, exceeds the scope, period, and maximum value of the IDIQ under which it was issued. The statute authorizes protest on any of these three grounds, and Plaintiff invokes each in the alternative.

84.     The scope inquiry under § 4106(f)(1)(A) and FAR 16.505(a)(2) turns on whether the order, as awarded, is materially different from the contract as the parties reasonably understood it. The material-difference analysis examines, among other factors, the type of work, the performance period, and the costs of the order as compared to the contract as awarded,

21

together with whether the original solicitation adequately advised offerors of the potential for the type of order issued.

85.     The IDIQ, as constituted, has three structural features that frame the material-difference inquiry: (a) a stated aggregate ceiling of $37,000,000,000; (b) a five-year ordering period; and (c) a multiple-award structure consisting of eleven prequalified holders (the "IDIQ's Structural Framework"). Exh. 1 at 5, § B.2.

86.     For the reasons set forth in Count II, which Plaintiff incorporates herein, the IDIQ's Structural Framework establishes the bargained-for character of the contract against which the materiality of any individual Challenged Task Order must be assessed.

Per-Order Magnitude and Work-Package Aggregation

87.     Each Challenged Task Order, as executed, packages within a single firm-fixed-price instrument multiple categories of work that the IDIQ Statement of Work treats as separable design-build deliverables, including vertical barriers, waterborne barriers, linear ground detection systems, road construction, gates, bridges, and drainage and erosion control. Exh. 2 at 1.

88.     The El Paso Task Order, as awarded, has a total value of $1,907,700,000, representing approximately five percent of the IDIQ's aggregate ceiling and approximately fifty-six percent of the IDIQ's aggregate ceiling divided pro rata across the eleven prequalified holders.

89.     The Big Bend Task Order ($960,423,540.00), the Laredo 3 Task Order awarded to Southwest Valley Constructors ($523,929,041.00), the Laredo 4 Task Order ($512,334,000.00), the Rio Grande 4 Task Order ($512,079,200.00), and the Del Rio 4 Task Order awarded to Barnard Construction ($645,853,488.00) each, as awarded, have total values exceeding $500,000,000.

90.     An IDIQ awarded to eleven prequalified holders for an aggregate ceiling of $37,000,000,000 over a five-year ordering period contemplates a granularity of ordering inconsistent with the issuance of individual task orders, each of which obligates a substantial fraction of the aggregate ceiling and aggregates within a single firm-fixed-price instrument multiple categories of work that the IDIQ's Statement of Work treats as separable design-build deliverables.

22

91.     Each Challenged Task Order, by virtue of its individual magnitude relative to the IDIQ's aggregate ceiling and its aggregation of multiple separable work packages into a single firm-fixed-price instrument, is materially different from the type of order the parties bargained for under the IDIQ as constituted, and is of a type that potential offerors could not have reasonably anticipated.

Compression of the Bargained-For Ordering Period

92.     In the alternative, and independently of the per-order magnitude and aggregation theory pleaded above, the Challenged Task Orders, considered together with the Pattern Orders and the cumulative obligation pattern they reflect, exceed the period and maximum value of the IDIQ within the meaning of 41 U.S.C. § 4106(f)(1)(A).

93.     Within the first approximately six months of the IDIQ's five-year ordering period (representing approximately ten percent of the bargained-for ordering period), CBP has obligated approximately $18.9 billion of the $37 billion aggregate ceiling, or approximately fifty percent (50%) of the ceiling.

94.     A rate of obligation that consumes approximately fifty percent of the IDIQ's aggregate ceiling within approximately ten percent of the bargained-for ordering period, if continued, will exhaust the IDIQ's aggregate ceiling materially in advance of the five-year ordering period for which the IDIQ was constituted.

95.     The performance period of a federal contract is a structural element of the contract such that a material change to that period converts the contract into an essentially and materially different instrument.

96.     The performance-period factor is one of the enumerated factors of the material-difference analysis applicable to scope inquiries under § 4106(f)(1)(A) and FAR 16.505(a)(2).

97.     A contract administered under a rate of obligation that compresses its bargained-for five-year ordering period into a substantially shorter effective ordering period is materially different from the contract the parties bargained for.

98.     Each Challenged Task Order, as awarded, contributes to the cumulative obligation pattern described above and is issued under a compressed effective ordering period materially different from the five-year ordering period for which the IDIQ was constituted. Each

Challenged Task Order therefore exceeds the scope of the IDIQ within the meaning of § 4106(f)(1)(A) and, in the alternative, exceeds the period and the maximum value of the IDIQ within the meaning of the same provision.

<u>Information Asymmetry</u>

99.     At the time Plaintiff submitted its proposal in response to any individual solicitation identified herein, Plaintiff could not have ascertained the awarded value of any Challenged Task Order, the CLIN structure of any Challenged Task Order as executed, or the cumulative rate of obligation against the IDIQ's aggregate ceiling reflected by the Pattern Orders and prior-awarded Challenged Task Orders. The information necessary to assess the per-order magnitude, work-package aggregation, and cumulative obligation pattern alleged herein became available to Plaintiff only after award of the Challenged Task Orders, and in significant part only through Plaintiff's review of publicly available data on USASpending.gov and SAM.gov following award.

100.     Plaintiff therefore could not have raised the matters pleaded in this Count at the solicitation stage as to any Challenged Task Order, and these matters were not waivable by Plaintiff's submission of proposals in response to the seven solicitations identified herein.

101.     For the reasons set forth in this Count, each Challenged Task Order, as awarded, increases the scope of the IDIQ within the meaning of 41 U.S.C. § 4106(f)(1)(A) by reason of its individual magnitude and aggregation of separable work packages, and in the alternative increases the period and the maximum value of the IDIQ within the meaning of the same provision by reason of the compressed effective ordering period under which it was issued. CBP's issuance of the Challenged Task Orders on those grounds constitutes arbitrary and capricious action contrary to law within the meaning of 5 U.S.C. § 706(2)(A) as incorporated by 28 U.S.C. § 1491(b)(4).

**COUNT IV**

**Recovery of Bid Preparation and Proposal Costs Expended on
Procurements Not Constituting Genuine Competitive Opportunities
(41 U.S.C. § 4106(f)(1)(A); 28 U.S.C. § 1491(b)(2))**

102.    Plaintiff incorporates the foregoing allegations.

103.    This Court has authority under 28 U.S.C. § 1491(b)(2) to award an interested party in a successful bid protest its bid preparation and proposal costs.

104.    At the time CBP issued each of the seven solicitations on which Posillico bid, CBP had already issued multiple Pattern Orders to Fisher Sand & Gravel Co. and Barnard Construction Co., Inc., and the cumulative award value under the IDIQ had become substantially concentrated within those two contractors. CBP knew or should have known when it issued the seven solicitations that, given the work to be specified by the resulting task orders and CBP's established ordering pattern, the resulting orders would exceed the scope of the IDIQ as alleged in Counts I, II, and III.

105.    Notwithstanding that knowledge, CBP solicited proposals from Posillico and other eligible IDIQ holders for each of the seven solicitations identified herein, requiring those holders to incur substantial bid preparation and proposal costs in order to respond. Posillico timely submitted technically responsive proposals on each of the seven solicitations and was not selected for award.

106.    Because each of the resulting Challenged Task Orders exceeded the scope of the IDIQ, as alleged in Counts I, II, and III, the seven solicitations on which Posillico bid were not genuine competitive opportunities for award within the IDIQ's lawful framework. Posillico's bid preparation and proposal costs, including those incurred through Posillico's teaming arrangement in support of the proposals, were expended in response to procurements that, by reason of CBP's conduct alleged herein, did not afford the genuine competitive opportunity contemplated by the IDIQ.

107.    Plaintiff is entitled to recover its bid preparation and proposal costs incurred in responding to each of the seven solicitations identified herein.

25

## COUNT V

### In the Alternative: Breach of Implied-In-Fact Contract to Fairly Consider Bids
### (28 U.S.C. § 1491(b)(1))

108.    Plaintiff incorporates the foregoing factual allegations.

109.    This Count is pleaded in the alternative pursuant to RCFC 8(d)(2) and arises under 28 U.S.C. § 1491(b)(1) on the implied-in-fact contract doctrine.

110.    Every Government procurement creates an implied-in-fact contract between the Government and the offerors that the offerors' proposals will be fairly considered.

111.    Of the twenty-four task orders awarded under the IDIQ to date, fourteen have been awarded to two of the eleven prequalified holders, representing approximately seventy-three percent of cumulative award value. Four of the eleven prequalified holders, including Posillico, have received no task orders. Posillico timely submitted technically responsive proposals on each of the seven solicitations identified herein and was not selected for award on any of them.

112.    CBP issued each of the seven solicitations identified in this Complaint, and Posillico timely submitted a proposal in response to each. Upon CBP's receipt of each Posillico proposal, an implied-in-fact contract arose between CBP and Posillico to fairly and honestly consider that proposal in accordance with the stated evaluation criteria of the solicitation.

113.    At the time CBP issued the seven solicitations on which Plaintiff bid, CBP had already issued the Pattern Orders and the cumulative award value under the IDIQ had become concentrated as alleged above.

114.    CBP has not produced documentation establishing an allocation methodology, ordering framework, or price-reasonableness analysis governing the issuance of task orders under the IDIQ.

115.    The concentration of award value within two of the eleven prequalified holders, considered together with the absence of any documented allocation methodology, ordering framework, or price-reasonableness analysis governing the issuance of task orders under the IDIQ, supports the inference that Posillico's proposals were not fairly considered in accordance with the stated evaluation criteria of any of the seven solicitations identified herein.

116.    CBP thereby breached the implied-in-fact contract arising from each of the seven solicitations identified herein.

117.    This Count does not seek the application of fair-opportunity procedures, alteration of any task order award, or any injunctive or equitable relief.

118.    Plaintiff seeks damages under this Count in the form of bid preparation and proposal costs, teaming and proposal-development costs, and other reliance costs incurred in connection with the seven solicitations identified herein. To the extent Posillico recovers bid preparation and proposal costs under Count IV, any damages awarded under this Count shall be reduced by the amount of such recovery.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.    A declaratory judgment that each of the Challenged Task Orders, as awarded, exceeds the scope of IDIQ Contract No. 70B01C26D00000010 within the meaning of 41 U.S.C. § 4106(f)(1)(A) and FAR 16.505(a)(2), on each of the grounds pleaded in Counts I, II, and III;

B.    An award of bid preparation and proposal costs incurred by Plaintiff in responding to the following solicitations, which Plaintiff timely bid and which, by reason of CBP's conduct alleged herein, were not genuine competitive opportunities for award within the IDIQ's lawful framework:

a. the El Paso Solicitation (No. 70B01C26R00005458);

b. the Rio Grande Solicitations (Nos. 70B01C26R00005818 and 70B01C26R00007153);

c. the Big Bend Solicitation (No. 70B01C26R00000020);

d. the Del Rio Solicitation (No. 70B01C26R00006118); and

e. the Laredo Solicitations (Nos. 70B01C26R00000016 and 70B01C26R00006846).

C.    In the alternative under Count V, damages under 28 U.S.C. § 1491(b)(1), including bid preparation and proposal costs, teaming and proposal-development costs, and reliance costs, offset against any recovery under paragraph 2 above; and

27

D.      Such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____

Alexander W. Major, Attorney of Record
Franklin C. Turner, Partner
Andrew Hamilton, Special Counsel
Philip Lee, Associate
McCarter & English, LLP
1301 K Street, NW, Suite 1000 West
Washington, DC 20005
202-753-3440
amajor@mccarter.com
fturner@mccarter.com
ahamilton@mccarter.com
plee@mccarter.com
Counsel for Plaintiff Posillico Civil, Inc.

Dated: May 13, 2026

28